FILED
CLERK, U.S. DISTRICT COURT

SEP 15 2004

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11   JEFRI AALMUHAMMED,                )
     an individual,                    )        Case No. CV 95-7885
12                                     )
          Plaintiff,                   )        ORDER AND
13                                     )        JUDGMENT GRANTING
          v.                           )        DEFENDANTS' MOTION
14                                     )        FOR SUMMARY
     SPIKE LEE; FORTY ACRES AND A      )        JUDGMENT
15   MULE FILMWORKS, INC.; BY ANY      )
     MEANS NECESSARY CINEMA,           )
16   INC.; WARNER BROTHERS, a          )
     division of TIME WARNER           )
17   ENTERTAINMENT, L.P.; VICTOR       )
     COMPANY OF JAPAN; LARGO           )
18   INTERNATIONAL, N.V.; LARGO        )
     ENTERTAINMENT; JVC                )
19   ENTERTAINMENT, INC.; and DOES     )
     2-100, inclusive,                 )
20                                     )
          Defendants.                  )
21   _____)

22



DOCKETED ON CM

SEP 17 2004

BY _____ 014

23        In *Aalmuhammed v. Spike Lee*, 202 F.3d 1227 (9th Cir. 2000), the Ninth

24   Circuit affirmed in part, reversed in part, and remanded this Court's dismissal of

25   Plaintiff's complaint.  The Ninth Circuit affirmed the dismissal of Plaintiff's

26   copyright and joint-authorship claims, but reversed dismissal of Plaintiff's third

27   claim for unfair competition and fifth claim for violation of the Lanham Act

28   ("unfair competition claims"), as well as his sixth claim for unjust enrichment,

seventh claim for quantum meruit and eighth claim for breach of implied contract ("equitable claims").[1]

Before the Court is Defendants' motion for summary judgment, partial summary judgment or, in the alternative, dismissal for failure to prosecute ("Motion"). In opposition to the Motion, Plaintiff concedes that his unfair competition claims are foreclosed by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 123 S. Ct. 2041 (2003), and stipulates to their dismissal. Accordingly, the Court grants summary judgment to Defendants on Plaintiff's third and fifth claims. The Court also finds that there is no genuine issue of material fact as to the equitable claims and grants summary judgment to Defendants on Plaintiff's sixth, seventh and eighth claims.[2]

## FACTUAL BACKGROUND

Plaintiff served as an acting coach and advisor on the feature motion picture Malcolm X (the "Picture"), which starred Denzel Washington in the title role and which was directed, co-written, and co-produced by Spike Lee. Plaintiff ultimately received three payments totaling $110,000 from Washington[3] and two payments

---

[1]This Court had dismissed the equitable claims, finding that they were barred by California's two-year statute of limitations. The Ninth Circuit, in reversing the dismissal of the equitable claims, found that New York law applied and that, therefore, the claims were not barred by New York's six year statute of limitations. *Aalmuhammed*, 202 F.3d at 1236-1237.

[2]Because the Court grants summary judgment to Defendants on all of Plaintiff's remaining claims, Defendants' motion to dismiss for failure to prosecute is denied as moot.

[3]On June 18, 1992, Washington wrote a check to Plaintiff in the amount of $5,000. The memorandum part of the check states "Technical Advisor." On June 6, 1995, Washington wrote two checks to Plaintiff for $5,000 and $100,000. Although Plaintiff never cashed the check for $100,000, it cannot be disputed that payment was made at the time the check was tendered and that Washington has remained willing to honor the check. It also appears that Washington paid for at

2

totaling $25,000 from a Spike Lee-controlled business.[4]  Plaintiff also was accorded valuable screen credit as the "Islamic Technical Consultant" on the Picture.

It is undisputed that Plaintiff initially approached Washington and offered to assist him with his role as Malcolm X.  The record does not show that, at the time he approached Washington, Plaintiff expected to receive any monetary remuneration.

Washington accepted the offer and Plaintiff began to perform.  At some point, Washington and Plaintiff both understood, and agreed in principle, that Plaintiff should receive some monetary consideration for his efforts.  Similarly, over the course of time, it became clear that Plaintiff was making contributions to the Picture that went beyond assisting Washington with his individual performance. Lee recognized this by giving Plaintiff screen credit as the Islamic Technical Consultant on the Picture.

The facts most favorable to Plaintiff indicate that Lee initially understood that Plaintiff was to receive monetary consideration from Washington for his assistance with Washington's performance.  Once it became clear that Plaintiff's contribution to the Picture extended beyond the services he was providing to Washington, Plaintiff reasonably believed that Lee knew Plaintiff expected to be compensated, in some form, in addition to what Washington would have paid him independently.  Plaintiff never asked that any understandings between him,

---

least some of the expenses incurred by Plaintiff during the filming of the Picture. *See* Deposition of Denzel Washington at 143 (testimony that Washington paid for Plaintiff to travel to Egypt).

[4]On April 2, 1993, Forty Acres and A Mule (one of the Spike Lee Defendants) wrote a check to Plaintiff in the amount of $2,500.  On May 4, 1993, Forty Acres and A Mule made a wire transfer in the amount of $22,500 to one of Plaintiff's creditors, pursuant to Plaintiff's request.

Washington and Lee be reduced to writing, nor did he ask how the amount to be paid would be determined or divided among the various parties.

When principal photography on the Picture was complete, Plaintiff approached Washington about the matter of monetary compensation. Washington made an initial payment of $5,000, with the understanding that he would pay Plaintiff more. It appears that Plaintiff then indicated that not only Washington, but also the studio and Lee individually, should share in the additional amount to be paid. Thereafter, Washington offered to pay Plaintiff approximately $100,000 more and indicated that Lee would contribute an additional $25,000. Plaintiff accepted both offers without suggesting to either Washington or Lee that he believed they were further obligated to him.

Several months elapsed before Plaintiff received Lee's $25,000 payment. During this period, Plaintiff did not attempt to open discussions about any additional obligation that Lee might owe Plaintiff or suggest to Lee in any way that when the $25,000 was paid it would not satisfy Lee's total obligation to him.

Approximately three years elapsed before Washington paid the additional amount to which he had agreed. Washington testified at his deposition that he previously had offered the money to Plaintiff, but that Plaintiff had wanted to defer payment. When Plaintiff did decide that he wanted payment, Washington tendered two checks for $105,000 to Plaintiff, which were accepted as fulfilling Washington's obligation to Plaintiff. Accordingly, Washington is not a party to this lawsuit.

Plaintiff now alleges that he made substantial contributions both to Washington's performance as Malcolm X and to the Picture as a whole, that both Lee and Washington acknowledged that they knew he expected to be paid for his services, and that they would work out the amount when the picture was

4

completed.[5] He claims now that the $25,000 and screen credit as the Islamic Technical Consultant did not adequately compensate him for his contributions to the Picture. Defendants acknowledge that Plaintiff did work for Washington personally and that Washington fully compensated Plaintiff for that work, but deny that they knew Plaintiff expected to be paid for his contributions to the Picture as a whole, other than with screen credit and for expenses. Although Plaintiff did not cash the $100,000 check from Washington, he accepted the $25,000 from Lee without making any contemporaneous claim that it did not fully extinguish Lee's obligation. Nevertheless, it is Lee, the studio, and other companies connected with the Picture, rather than Washington, against whom Plaintiff has brought this action.

///
///
///
///
///
///
///
///
///
///

_____

[5]In his Opposition, Plaintiff contends that none of the $135,000 he received was compensation for his contributions to the Picture as a whole. He claims that the $25,000 from Lee was "partial reimbursement" for expenses and that the $110,000 from Washington was compensation for Plaintiff's personal services to Washington. Plaintiff argues that because it is disputed that he ever agreed with Defendants or Washington about how much he was to be paid for his work and that the payments were intended to compensate him fully, summary judgment cannot be granted. As set forth below, however, Plaintiff has not produced sufficient evidence to permit a reasonable jury to find for him.

5

# DISCUSSION

As set forth more fully below, Plaintiff's equitable claims[6] against Lee fail as a matter of law. As to his unjust enrichment claim, Plaintiff has presented no evidence that it would be inequitable for Defendants to retain the benefit of the services Plaintiff rendered. As to his quantum meruit claim, Plaintiff has presented no evidence of the reasonable value of his services to the Picture and has failed to show that he "reasonably expected" compensation in excess of the $135,000 in cash, plus other benefits, he requested and received. Indeed, if he held such an expectation, it was unexpressed and contradicted his conduct and statements to Lee.

## A.    Standard of Review

Summary judgment is warranted where there is no genuine issue of material fact on a particular claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. PRO. 56(c). A fact issue is "genuine" if there is sufficient

---

[6]Under New York law, "[r]ecovery in quantum meruit is treated as subsumed in a claim for breach of implied contract . . . , as is recovery on a theory of unjust enrichment." *American Int'l Specialty Lines Ins. Co. v. United States Olympic Comm.*, 219 A.D. 2d 458, 631 N.Y.S. 2d 40 (N.Y. App. Div. 1995)(citations omitted). Quantum meruit and unjust enrichment define the measure of damages that may be recovered under an implied contract theory. *See, e.g., Nassau County v. Incorporated Village of Roslyn*, 218 A.D. 2d 688, 689, 631 N.Y.S. 2d 42, 43 (N.Y. App. Div. 1995) ("[defendant] was liable under the theory of implied contract for damages in quantum meruit."); *Kagan v. K-Tel Entm't, Inc.*, 172 A.D. 2d 375, 568 N.Y.S. 2d 756 (N.Y. App. Div. 1991) ("[T]o recover under a theory of quasi contract, a plaintiff must demonstrate that services were performed *for the defendant* resulting in its unjust enrichment.") (emphasis in original); *Landcom, Inc. v. Galen-Lyons Joint Landfill Comm'n*, 359 A.D. 2d 967, 687 N.Y.S. 2d 841 (N.Y. App. Div. 1999) ("A 'quasi contract' theory 'only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment' [citations]."). Accordingly, Plaintiff's implied contract claim is discussed in conjunction with Plaintiff's unjust enrichment and quantum meruit claims.

evidence for a reasonable juror to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court examines the evidence in the light most favorable to Plaintiff and draws all reasonable inferences in his favor. *Id.* at 244.

Plaintiff bears the burden of proof at trial on his own claims.  Defendants can show an absence of a triable issue by pointing to Plaintiff's lack of evidence establishing an element of his claims. FED. R. CIV. PRO. 56(e); *see also* Schwarzer, Tashima & Flagstaffe, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, Chap. 14 at 29-30.  The burden then shifts to Plaintiff to present evidence establishing a genuine issue of fact on that element.

**B.      Unjust Enrichment**

Defendants are entitled to summary judgment on Plaintiff's unjust enrichment claim because he has failed to submit evidence establishing each element of his claim.  "To prevail on a claim of unjust enrichment, plaintiff must show that (1) defendant was enriched (2) at plaintiff's expense, and (3) that 'it is against equity and good conscience to permit . . . defendant to retain what is sought to be recovered.'" *Lake Minnewaska Mtn. Houses v. Rekis*, 259 A.D. 2d 797, 798 (quoting *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y. 2d 415, 421 (N.Y. 1972), *cert denied*, 414 U.S. 829).  "It is the plaintiff's burden to 'demonstrate that services were performed *for the defendant* resulting in [the latter's] unjust enrichment'[emphasis in original]) . . ." *Clark v. Daby*, 300 A.D. 2d 732 (N.Y. App. Div. 2002) (quoting *Kagan*, 172 A.D. 2d at 376); *see also Schuler-Haas Elec. Corp. v. Wager Constr. Corp.*, 57 A.D. 2d 707 (N.Y. App. Div. 1977) ("To recover in *quasi* contract, plaintiff must prove that it performed work or services for defendant which resulted in defendant's unjust enrichment.").

In his Opposition, Plaintiff characterizes the $110,000 he received from Washington as compensation for personal services rendered to Washington

7

individually.  Plaintiff characterizes the $25,000 he received from Lee as partial reimbursement for expenses incurred, not compensation.  Plaintiff fails to include the compensation he received in the form of screen credit as the Islamic Technical Consultant on the Picture.

Plaintiff argues that because he made substantial contributions to the Picture[7] and because the money he received did not compensate him for those contributions, Defendants were unjustly enriched.  Opposition at 7-8.  Plaintiff's argument fails as a matter of law.  Assuming that Defendants were enriched by Plaintiff's contributions to the Picture and that such enrichment was at Plaintiff's expense, "the mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment."  *Clark*, 300 A.D. 2d at 732; *see also Kagan*, 172 A.D. 2d at 376 ("It is not enough that the defendant received a benefit from the activities of the plaintiff.").  Plaintiff has made no showing that Defendants acted tortiously or fraudulently, either in allowing Plaintiff to perform services[8] or in failing to make additional payments to Plaintiff, or that it would be otherwise inequitable for Defendants to retain the benefit of Plaintiff's services.  *See Paramount Film Distrib. Corp*, 30 N.Y. 2d at 421.

---

[7]In support of his argument that Defendants were enriched by Plaintiff's contributions to the Picture, Plaintiff states that "the Ninth Circuit clearly recognized [his] 'very valuable contributions to the film' and 'substantial contribution to the film,' *Aalmuhammed*, 202 F.3d at 1235-1236."  Opposition at 7.  Plaintiff appears to misunderstand the posture of the case before the Ninth Circuit.  This Court resolved the equitable claims on a motion to dismiss, finding that they were barred by California's statute of limitations.  In reversing the motion to dismiss, the Ninth Circuit assumed the allegations in the complaint to be true and explicitly declined to make any findings regarding the value or nature of Plaintiff's services with respect to the equitable claims "because the question on review is limited to which state's statute of limitations applies."  *Id.* at 1236.

[8]It is undisputed that Plaintiff approached Washington, unsolicited, and offered his services in connection with the Picture.

Moreover, the undisputed facts show no inequity that would give rise to a claim for unjust enrichment. Plaintiff came to the project on his own initiative. At some point, the parties came to an understanding that he would be compensated for his services in a manner that would be worked out by the parties at some future time. Plaintiff accepted $135,000 and valuable screen credit as compensation for his work. He made no contemporaneous demand for more and his conduct was not consistent with one who, at that time, was seeking the millions of dollars that he now claims are due him. The acceptance of valuable consideration in these circumstances, along with an absence of evidence of any wrongful conduct by Defendants, extinguishes his claim for unjust enrichment. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for unjust enrichment.

## C.    Quantum Meruit

Plaintiff's quantum meruit claim also fails. "In order to make out a cause of action in quantum meruit or quasi contract, a plaintiff must establish (1) the performance of services in good faith; (2) the acceptance of those services by a person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services." *Landcom*, 259 A.D. 2d at 968; *Heller v. Kurz*, 228 A.D. 2d 263, 264 (N.Y. App. Div. 1996); *Tesser v. Allboro Equip. Co.*, 302 A.D. 2d 589, 591 (N.Y. App. Div. 2003).[9]

---

[9]Although Plaintiff is entitled to the reasonable value of his services in an action to recover in quantum meruit, he may not recover the value of the benefit he conferred on Defendants unless they acted wrongfully and reaped a benefit greater than the reasonable value of his services. *See Heller*, 228 A.D. 2d at 264; *Farash v. Sykes Datatronics, Inc.*, 59 N.Y. 2d 500, 503-06 (N.Y. 1983); *see also Carlino v. Kaplan*, 139 F. Supp. 2d 563, 565 (S.D.N.Y. 2001) (claimant cannot recover percentage of profits or gross receipts in quantum meruit, only hourly rate for services). As set forth more fully above, Plaintiff has not shown that Defendants acted wrongfully or reaped a benefit greater than the reasonable value of his services. *See infra*, pp. 4-5.

9

1. **Plaintiff Has Failed to Produce Evidence to Establish the
Reasonable Value of His Services.**

In order to make a claim in quantum meruit, Plaintiff must establish the
reasonable value of his services. *Landcom*, 259 A.D. 2d at 968; *Heller*, 228 A.D.
2d at 264. In this case, however, "the record is devoid of evidence" that would
establish this element of Plaintiff's claim. *Geraldi v. New Zealand*, 212 A.D. 2d
575, 576 (N.Y. App. Div. 1995) (affirming summary judgment against plaintiff on
quantum meruit claim). Plaintiff has not offered "any calculations as to the amount
of hours he expended," nor the "value [to be] placed on his services on an hourly,
daily or weekly basis." *Geraldi*, 212 A.D. 2d at 576; *Carlino*, 139 F. Supp. 2d at
565 ("compensation under quantum meruit is based on an hourly rate for the
amount of time services are rendered"). Plaintiff also has provided no expert or
other admissible opinion testimony from which the value of his services to the
Picture might be determined.[10]

Plaintiff states that the reasonable value of his services "has yet to be
determined" and concludes that this absence of evidence shows a "genuine"
dispute. Opposition at 5. This argument reflects a fundamental misunderstanding
of the function of summary judgment. Plaintiff cannot survive summary judgment
unless, in opposing this Motion, he puts forth evidence sufficient for a reasonable
factfinder to find for him on the elements of his claim. *See Anderson*, 477 U.S. at

---

[10]Although it appears that the standard method for computing the reasonable
value of services is based on an hourly rate for the time spent, that amount could
be calculated in other ways, depending on the evidence presented as to the
standards of a given industry. As indicated above, however, Plaintiff has provided
<u>no</u> evidence by which any amount could be calculated. Specifically, Plaintiff has
not shown the amount of time he expended on this matter, his actual expenses, the
amount others rendering similar services in the industry have been paid, or any
other basis for computing an appropriate amount. The Court, therefore, need not
address the situation that would have existed had he done so.

250.  Even if the Court assumes, for purposes of this Motion, that Plaintiff performed his services in good faith, that those services were accepted by Defendants, and that he reasonably expected additional compensation therefor, the lack of evidence of the reasonable value of his services forecloses Plaintiff's claim for more than the $135,000 and other benefits that he already has received.

The only evidence before the Court that could be construed as showing the reasonable value of Plaintiff's services is the $135,000 paid by Washington and Lee.[11]  But for those payments, Plaintiff would be entitled to nothing because there is no other evidence before the Court as to this element of his claim.  For purposes of this Motion, Plaintiff's failure to offer any proof of the reasonable value of his services, beyond the $135,000 he already was paid, is dispositive of his quantum meruit claim.[12]

### 2.    Plaintiff's Expectation of Additional Compensation Is Objectively Unreasonable.

Plaintiff claims that the $110,000 he received from Washington was compensation for his personal services to Washington and that the $25,000 he received from Lee was only "partial reimbursement" of expenses, which failed to compensate him adequately for the services he provided to the Picture as a whole.

---

[11]Defendants have offered evidence that Dr. Betty Shabazz, Malcolm X's widow, received screen credit as a Technical Consultant and was paid $125,000. Plaintiff argues, and the Court agrees, that the amount that Dr. Shabazz was paid is irrelevant to determining the reasonable value of Plaintiff's services.  Opposition at 5.

[12]The Court also notes that the $135,000 in cash received, plus the monetary value of the other benefits received for his work on the Picture, albeit unquantified, almost certainly exceeded any "reasonable value" for which Plaintiff could legitimately argue.  Plaintiff did not become associated with the Picture in response to any need expressed by either Lee or Washington.  On the contrary, he came to Washington as a volunteer offering to help him with his performance.

11

Plaintiff now claims that he expected far higher compensation from Defendants. This expectation, if held at all, is objectively unreasonable and defeats his quantum meruit claim for more than the $135,000 and other benefits he already received. *Moors v. Hall*, 143 A.D. 2d 336, 338 (N.Y. App. Div. 1988) (expectation of compensation must be "reasonable"); *Melnitzky v. Sotheby Parke Bernet, Inc.*, 300 A.D. 2d 201, 202, 750 N.Y.S. 2d 859, 859-60 (N.Y. App. Div. 2002). Plaintiff's conduct and statements at the time the services were rendered are inconsistent with any reasonable expectation of higher compensation. *Melnitzky*, 300 A.D. 2d at 202.

Plaintiff accepted $25,000 from Lee in a manner that entitled Lee to believe that the matter was concluded.[13] Plaintiff points to a July 24, 1992, letter he wrote to Lee as supporting his argument that Lee understood that the $25,000 Lee paid to him was only partial reimbursement for expenses, and that he reasonably expected additional monetary compensation for his services.[14] In fact, the letter itself and

---

[13]Plaintiff himself describes his expectation that "I felt all the parties would share in this remuneration," including Lee, the studios and Washington. Aalmuhammed Deposition at 225. That is exactly what happened. All parties paid him the $135,000 he requested, and there is no suggestion that Plaintiff communicated that he expected more.

[14]The letter reads, in full:

Dear Spike, Thank you for assisting Denzel with the burden he has assumed in his endeavors to see that I receive some fiscal remuneration and reimbursement for my efforts. Regarding the sum that you have offered to contribute to this end, ($25,000), I would prefer to receive it in one of two ways: 1) As I explained to Denzel, I presently owe a combined six-figure sum to several individuals in the Arabian Gulf. It would be less troublesome for me if a $25,000 check were issued in the name of one of those individuals, instead of in my name. 2) If option 1 is not possible or suitable for you, and the check must be issued in my name, then a) Please be sure that the check memo states something like "partial reimbursement for out-of-pocket expenses." [My accommodations alone easily exceeded $25,000.

12

Plaintiff's actions in the period after the letter and before he filed this case demonstrate just the opposite. The letter begins with Plaintiff thanking Lee "for assisting Washington with the burden he has assumed in his endeavors to see that I receive some fiscal remuneration and reimbursement for my efforts." The letter goes on to say: "Regarding the sum you have offered to contribute to this end ($25,000), I would prefer to receive it in one of two ways . . . ." Following a description of the desired modes of payment,[15] Plaintiff appears to try to tie up a

---

Offtimes I stayed in a suite at The Plaza, the cost of which generally hovered around $1000 per night]. b) Please issue the $25,000 amount in several checks of less than $10,000. For example: one check for $9000, a second for $9000, and a third for $7000. Or, five checks for $5000 each. Finally, you remember, of course, the last time I came to New York, when Denzel did the voiceovers (June 19th). Afterwards, as per your request, I went to the sound studio to record the hajj chant (labbayk Allahumma labbayk...etc) and voice fill-ins for the two greeters in the Cairo airport scene. Upon completing those sessions, the woman in charge asked if I'd like to be compensated for my endeavors that day. I told that I'd talk to you about it later. Here's my idea: Can we just consider my work that day gratis, and have your corporation reimburse me for the cost of my round-trip airfare? If that is agreeable to you, then that airfare expense was $1,520 (round trip Santa Barbara, CA-NYC-Santa Barbara, business class via American Airlines). Please make this a separate check from the aforementioned $25,000 amount, and enter on the check memo something like "plane ticket reimbursement" if you are indeed willing to reimburse me for that. Appreciatively, Jeff. Isaacs Decl., Ex. F.

[15]In the letter, Plaintiff first requests that Lee pay Plaintiff's creditors in the Arabian Gulf directly. He only requests that the payment be described as "reimbursement" if paid directly to him. Characterizing a payment as reimbursement for expenses, rather than income, could serve to minimize the recipient's tax liability. *See* Washington Deposition at 70 ("At other points I wanted to give [Plaintiff] the money, but he didn't want to take it for whatever reasons he had, taxes or whatever he was saying to me about that.").

13

"loose end" by pointing out that there was one additional day that would not be accounted for in the $25,000 payment and suggesting that if Lee would pay his airfare for that day, he would "consider his work for that day gratis."

Nothing in this letter suggests that after Lee had paid the $25,000 for which Plaintiff was thanking him, he would then be obliged to discuss the payment of some other amount, later asserted to be millions of dollars, which he had not yet mentioned. Indeed, the letter could hardly have been more clear that if Washington satisfied the remaining burden that he had assumed, and if Lee both paid the $25,000 and handled the unaccounted for day as Plaintiff suggested, the accounts among the three of them would be squared.[16]

Plaintiff did receive from Lee "some fiscal remuneration and reimbursement for [his] efforts" in the form of $25,000 cash. Plaintiff also received considerable non-fiscal value for his efforts in obtaining screen credit therefor and, in a less tangible way, in the value to his reputation of having been engaged to work directly with two such major film persona as Lee and Washington on such a high profile film.[17] Before the Picture, Plaintiff had no generally recognizable credentials either

---

Plaintiff also requests that any payment to him be broken up into amounts less than $10,000. Structuring a transaction in that manner in order to circumvent reporting requirements is a violation of federal law . See 31 U.S.C. §§ 5311, et seq. (2004); 31 C.F.R. § 103.11 (2004) (making it illegal to break down cash transactions totaling over $10,000 into smaller sums for the purpose of evading financial reporting requirements).

[16]Contrary to his current claim that the $25,000 from Lee was for partial reimbursement of expenses only, when asked during his deposition what "effort" he was being compensated for, Plaintiff stated "I was speaking of my efforts in co-creating the film." Aalmuhammed Deposition at 223-24.

[17]The Court notes that in the legal profession, it is very common for lawyers to represent clients pro bono in certain high profile matters, not just to serve the public interest, but also to obtain the sort of status or publicity that such representation confers upon them.

for working in the motion picture industry or for providing expertise in matters of religion or otherwise. After the Picture he had both.

In further support of his argument that the $25,000 was only for "partial reimbursement," Plaintiff provides a document that purports to be an invoice to Lee for $25,000. Although he referred to the invoice during his deposition, *see* Aalmuhammed Deposition at 222, he never produced it in discovery and it appears for the first time attached to his Opposition nearly eight years later. Aalmuhammed Decl., Ex. A. The invoice includes the statements "partial reimbursement for out-of-pocket expenses" and "not an invoice for services rendered."

When read with the letter, no reasonable factfinder could find for the Plaintiff based on the invoice.[18] In the letter, Plaintiff stated that it was *Washington* who had the obligation to pay Plaintiff and that Lee had offered to assist Washington with *his* obligation. Plaintiff asked for $25,000 from Lee, and the invoice is evidence of that request. No reasonable factfinder could construe the letter and the invoice as evidencing anything other than an end to Defendants' obligation to Plaintiff.

Moreover, the record does not suggest that Plaintiff's contribution to the Picture was, or was expected to be, anything unique or special. Nothing in Plaintiff's personal history suggests that if Lee or Washington had been looking for someone to render the services Plaintiff provided, they would have selected him. Plaintiff possessed no credentials suggesting or verifying that he had any singular knowledge or experience to bring to bear on the services he undertook. He did not know Malcolm X or any of the other characters upon whose lives the Picture was

---

[18]The notations on the invoice also are consistent with Plaintiff's request in the July 24, 1992, letter that either payment could be made directly to him, in which case it should be broken up into payments of less than $10,000 each and characterized as "partial reimbursement for out-of-pocket expenses," or that payment could be made directly to Plaintiff's creditors and not in Plaintiff's name. *See* footnote 15, *supra*.

based.  He did not have any acting or directorial experience from which to draw in assisting Washington's performance, other than with matters of the details of religious observance.  Although his expertise concerning the Nation of Islam has not been questioned, there is no evidence that he has served the religion in any official capacity or otherwise distinguished himself therein.  Finally, Plaintiff's name alone does not carry with it any special assurance of quality or expertise, either in the industry or among motion picture audiences.

The record does show that the Picture received high praise for its technical accuracy.  The praise was conferred not just to the Picture's technical accuracy in matters of religious details, but to all matters. Notwithstanding that Plaintiff received screen credit for his contribution to the Picture, he was not nominated for any award, nor did he receive any other special industry recognition.

Even if the Court assumed that the $25,000 from Lee was "partial reimbursement" of expenses and the $110,000 from Washington was "compensation" for services rendered to Washington individually, it would not show that Plaintiff reasonably expected additional cash compensation.  Defendants compensated Plaintiff with screen credit as the "Islamic Technical Consultant" on the Picture and Plaintiff's public involvement with the Picture was also an asset that could have carried significant benefits to Plaintiff in the entertainment industry.  Plaintiff has not shown that the compensation he received was inadequate, that he reasonably expected any additional compensation, or that such expectation was communicated to Defendants until long after he was paid.  Accordingly, viewing the facts in the light most favorable to him, Plaintiff's expectation of additional compensation is objectively unreasonable and his claim in quantum meruit cannot withstand summary judgment.

## ORDER AND JUDGMENT

Based on the foregoing, IT IS HEREBY ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment be GRANTED in its entirety.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss for Lack of Prosecution be DENIED as moot.

IT IS SO ORDERED AND ADJUDGED.


DATED: Sept 15, 2004

J. Spencer Letts
United States District Judge